FILED
 2012 Dec-20 AM 09:53
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MARY NELSON and OTIS NELSON, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | 7:12-cv-01965-LSC |
| | ] | |
| NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, et al., | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.  Introduction

The Court has for consideration a motion to dismiss, which was filed by Defendant Nationwide Property & Casualty Insurance Company, ("Nationwide"), on June 7, 2012. (Doc. 7.) Plaintiffs Otis and Mary Nelson (the "Nelsons") state four claims against Nationwide: breach of contract of insurance; negligent & wanton performance of insurance contract; negligent and wanton performance of contract of repair; and fraud. (Doc. 1.) Nationwide contends that Plaintiffs' claims are due to be dismissed because they fail to state a claim and fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9. (Doc. 7.) The Nelsons filed a response

to Nationwide's motion to dismiss. (Doc. 15.) Nationwide, in turn, filed a reply to the Nelsons' response. (Doc. 17.) Having been fully briefed, the motion to dismiss is now ripe for consideration.

II.     Facts

Nationwide is a corporation formed in Ohio with its principal place of business in Ohio. Nationwide is licensed and registered to do business in Alabama and, through its agents, does business in the state. Nationwide insured the Nelsons' home at the time of the events at issue in this lawsuit. The Nelsons' home was located 3406 Green Grove Drive, Tuscaloosa, Alabama 35404-2124.

On April 27, 2011, a tornado severely damaged the Nelsons' home in Tuscaloosa. Because of the extensive damage, the Nelsons were forced to vacate their home. The Nelsons promptly notified Nationwide of the damage to their home.

On May 6, 2011, Nationwide sent an agent, J. Drew Mayfield ("Mayfield"), to assess the damage and adjust the loss. Mayfield and an accompanying structural engineer determined that although the home was indeed uninhabitable, it was not a total loss. Thus, Nationwide decided to repair the home.

On May 8, 2011, Mayfield returned to the Nelsons' home, bringing with him two representatives of GBS Roofing and Restoration, LLC ("GBS") including George

Smith ("Smith"), the owner of GBS. Mayfield told the Nelsons that GBS had worked with him on several losses before, that GBS was a good company which would do the work for the Nelsons at the adjusted value, and that they would do a good job. The GBS representatives assured the Nelsons that they would take care of everything and that they should not worry.

The Nelsons signed a contract with GBS, in which GBS agreed to perform the repair work. Mayfield completed his estimate on May 18, 2011, and two days later he forwarded a check to the Nelsons in the amount of $79,426.60. The insurance policy stated that payments would only be made to the Nelsons as the insured party and their mortgagee, but Mayfield also included GBS as a payee on the draft. Mayfield and Smith encouraged the Nelsons to endorse the check and give it to Smith, who would then obtain the endorsement of the mortgagee.

GBS performed sporadic work on the Nelsons' home over the next several months. In early fall of 2011, the Nelsons were notified that a subcontractor of GBS was filing a lien upon their home for non-payment. When the Nelsons confronted GBS, an employee stated that Smith had taken the Nationwide check, but assured them that GBS would pay the subcontractor when money became available. Although GBS did pay the money to have the lien removed, GBS failed to complete the home.

At the time of filing the complaint, the Nelsons' home was uninhabitable and Nationwide had notified them that their additional living expense coverage was due to expire on April 27, 2012, leaving the Nelsons without a home and lacking a way to pay for a place to live. The Nelsons claim that they have been denied indemnification for the loss of their home as a result of Nationwide's actions and are seeking compensatory and punitive damages in excess of $75,000, exclusive of interest and costs.

III.   Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In addition, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[1] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[1] In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1951-52).

IV.   Analysis

Nationwide argues that all four of the Nelsons' claims are due to be dismissed for various reasons. First, Nationwide contends that the complaint does not state a breach of contract of insurance claim because the Nelsons do not allege that Nationwide failed to pay for the covered damages under the contract. Second, Nationwide contends that Alabama courts have expressly rejected any first party cause

of action based on negligent or wanton performance of an insurance contract or repair contract; thus, the complaint does not state claim for negligent or wanton performance of the insurance contract. Third, Nationwide argues that the Nelsons do not state a negligent and wanton performance of a contract for repair because the Nelsons' policy does not contain a provision suggesting that Nationwide would be responsible for supervising the contractor during repairs. Finally, Nationwide argues that the facts alleged in the complaint fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b); thus, the Nelsons fail to state a fraud claim.

  A.  Breach of a Contract of Insurance

  Count IV of the Nelsons' complaint asserts a breach of a contract of insurance claim against Nationwide. (Doc. 1 at 33.) "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. V. Hill*, 825 So. 2d 100, 105 (Ala. 2002)).

  Nationwide argues that the Nelsons' complaint does not state a breach of contract cause of action against it because the "insurance policy only requires

Nationwide to pay for covered damages" and the Nelsons do not dispute that Nationwide did in fact pay for the covered damages. (Doc. 7 at 1.)

Under Alabama law, "misfeasance, or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability *as well as contract liability. . . .*" *Morgan v. S. Cent. Bell Tel. Co.*, 446 So. 2d 107, 114 (Ala. 1985) (emphasis added). The Nelsons allege that Nationwide breached the terms of the contract through "negligent affirmative conduct in the performance of a promise" by making GBS a payee on the check, instead of following the policy terms which provided that only the insured and their mortgagee be made payees. (Doc. 15 at 7.) The Nelsons further allege that encouraging them to endorse the check and give it over to GBS was a breach of the contract which resulted in GBS diverting the payment to its own use. The allegations of the complaint are sufficient to state a claim for breach of contract in that they provide facts that could satisfy each of the elements of breach of contract. Specifically, the complaint asserts facts that demonstrate that (1) the insurance contract is valid and binding on the Nelsons and Nationwide; (2) the Nelsons performed their obligations under the contract; (3) Nationwide failed to perform its obligations by making GBS a payee on the check; and (4) the Nelsons have incurred damages by being denied indemnification for the loss of their home.

Assuming, as the Court must at this stage in the proceedings, that the allegations in the Complaint are true, the Nelsons have alleged facts which could "plausibly give rise to an entitlement to relief." *American Dental Ass'n*, 605 F.3d at 1290. Therefore, Nationwide's motion to dismiss the Nelsons' Breach of a Contract of Insurance claim is due to be denied.

B. Negligent and Wanton Performance of a Contract of Insurance

Count V of the Nelsons' complaint asserts a claim of negligent and wanton performance of the insurance contract against Nationwide. (Doc. 1 at 36.) Nationwide argues that the Nelsons claim must fail because Alabama courts have "expressly rejected any first party cause of action based in negligent handling of a claim." (Doc. 7 at 2.) Nationwide lists several cases in support of its argument, but none pertains to the facts at issue in this case. *See Kerwin v. Southern Guaranty Ins. Co.*, 667 So. 2d 704 (Ala. 1995) (no claim for negligent and wanton performance for failure to investigate claim when items were not within policy coverage); *Pate v. Rollinson Logging Equipment, Inc.*, 628 So. 2d 337, 345 (Ala. 1993) (no negligence claim for delaying payment); *Armstrong v. Life Ins. Co. Of Va.*, 454 So. 2d 1377, 1380 (Ala. 1984) (no negligence cause of action for denial of claims), *overruled on other grounds, Hickox v. Stover*, 551 So. 2d 259, 264 (Ala. 1989); *Chavers v. Nat'l Security Fire & Casualty Co.*,

405 So. 2d 1 (Ala. 1981) (same); *Calvert Fire Ins. Co. v. Green*, 180 So. 2d 269 (Ala. 1965) (no negligence cause of action for not paying claim more quickly than policy required). Nationwide relies on cases too narrow in their holdings to encompass the facts at issue here. The Nelsons do not take issue with the timing or decision of Nationwide's claim handling, nor do they argue the coverage of the policy.

Instead, the Nelsons' argue that Nationwide was negligent in its performance of the insurance contract *after* the claims handling process. The Nelsons argue that Nationwide's actions constitute "misfeasance, or negligent affirmative conduct in the performance of a promise" which can "subject[] an actor to *tort liability* as well as contract liability." *Morgan*, 446 So. 2d at 114 (emphasis added). While *Morgan* is not exactly on point, it is broad enough to encompass the facts in this case, and the cases cited by Nationwide do not specifically apply to the facts in this case. Thus, the Nelsons allege facts which state a plausible claim for relief, and Nationwide's motion to dismiss the Nelsons' Negligent and Wanton Performance of a Contract of Insurance claim is due to be denied.

C. Negligent and Wanton Performance of a Contract of Repair

Count VI of the Nelsons' complaint asserts a claim of negligent and wanton performance of the repair contract against Nationwide. (Doc. 1 at 42.) Nationwide

mentioned this claim in its brief in support of the motion to dismiss, but failed to set forth an argument against it outside of its argument that "[t]he Courts in Alabama have expressly rejected any first party cause of action based in negligent handling of a claim." (Doc. 7 at 2–3.) This argument fails because an insurance contract is not the same as a repair contract; however, in its reply brief, Nationwide argued that no provision in the Nelsons' policy suggested that it would be responsible for supervising GBS during the repairs. The Nelsons, on the other hand, argue that when an insurer elects to repair the damaged property, the contract to repair replaces the insurance contract, imputing all duties and obligations.

Under Alabama law, when a policy affords the insurer an election to repair or pay, "the exercise of the option to repair converts the original contract into a contract to repair." *State Farm Mutual Automobile Ins. Co. v. Dodd*, 162 So. 2d 621, 626 (Ala. 1964) (citing 7 Am. Jur. 2d, Automobile Insurance, § 192). The hiring of an independent contractor to perform the repair work does not relieve the insurer of liability. *See id.* ("[O]ne *who by his contract* or by law is due certain obligations to another cannot divest himself of liability for a negligent performance by reason of employment of [an independent] contractor.")

The Nelsons' allegations state a claim which raises a plausible right to relief. Therefore, Nationwide's motion to dismiss the Nelsons' Negligent and Wanton Performance of a Contract of Repair claim is due to be denied.

D. Fraud

Count VII of the Nelsons' complaint asserts a claim of fraud against Nationwide. (Doc. 1 at 47.) Nationwide argues that the facts alleged in the complaint fail to meet the heightened pleading standard of Fed. R. Civ. P. 9(b). In addition to the standard discussed above, Rule 9(b) provides that for a claim "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The particularity required by the rule is satisfied when "the complaint alleges facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (internal quotation and citation omitted).

Nationwide contends that the Nelsons' fraud claim is inadequately pleaded because they fail to state any false representations or the dates upon which they occurred. The Nelsons do, however, provide Nationwide with the dates and substance of the alleged false statements. (*See* Doc. 1 at 15–16.) Specifically, the complaint states

that (1) Nationwide held out and represented to the Nelsons that Mayfield was a specialist in handling large, catastrophic losses; (2) Mayfield, by virtue of his special or confidential relationship, was under a duty to disclose those material facts concerning the Nelsons' loss for which he and Nationwide had superior knowledge; (3) Mayfield had superior knowledge of the fact that a risk of theft and appropriation would arise if the Nelsons endorsed and delivered the check indemnifying their loss to a third party with no property rights in the covered property and, thus, no incentive to safeguard and protect those rights; (4) Mayfield suggested the Nelsons endorse and deliver a check indemnifying their loss to GBS, a third party with no property rights in the covered property; and (5) Mayfield intentionally, recklessly, and negligently failed to disclose his superior knowledge. Alternatively, the complaint states that Mayfield, acting as the agent or employee of Nationwide, knew his representations were false or were made in negligent or reckless disregard of their falsity. Further, the complaint states the exact dates that these representations took place. (*See* Doc. 1 at 4–6.)

The Nelsons' allegations present " enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. Additionally, the Eleventh Circuit has emphasized that the application of Rule 9(b) " must not abrogate the concept of notice

pleading." *U.S. ex rel. Clausen v. Laboratory Corp. Of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202). Rule 9(b) is satisfied where the Plaintiffs set forth "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (quoting *Clausen*, 290 F.3d at 1310)). The Nelsons have set forth all that is required by Rule 9(b). Therefore, Nationwide's motion to dismiss the Nelsons' fraud claim is due to be denied.

V.  Conclusion.

For the foregoing reasons, Defendant's Motion to Dismiss is due to be DENIED. A separate order will be entered consistent with this Opinion.

Done this 20th day of December 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032